I respectfully dissent from the opinion of the majority of the court.
Appellants, plaintiffs below, filed a motion for partial summary judgment in which they argued Code 1975, § 40-8-1 (e), "is unconstitutional on its face and that the plaintiffs, as to this issue, are entitled to judgment as a matter of law" because "there is no issue as to any material fact." I agree with the appellants that the issue of whether Code 1975, §40-8-1 (e), is unconstitutional on its face is purely a question of law, but I would hold the statute constitutional on its face, and thus affirm the decision of the trial court.
Appellant's case below was based solely on a demonstration that under Code 1975, § 40-8-1 (e), municipal and county taxes for Class III property were assessed at a 15% rate for all counties except Jefferson and Morgan where the ad valorem rate was 20%, and an allegation that the distinction "demonstrates a patent denial of equal protection in that, the residents of Jefferson County . . . who own Class III property are not being taxed equally with other Class III taxpayers." As pointed out by the trial court in its final order "Plaintiffs make the claim, unsupported by any facts or evidence, that this distinction constitutes a denial of equal protection and violation of the Fourteenth Amendment to the United States Constitution." I would hold that a mere showing that taxpayers in different counties are treated differently, coupled with an unsupported allegation that the *Page 789 
difference in treatment is arbitrary, capricious and without a rational basis, is insufficient to demonstrate that the statute which exacts the different tax rates for different counties is unconstitutional on its face.
The basic tenet of the equal protection clause is not that all persons must be treated equally, but rather that all persons SIMILARLY SITUATED must be treated equally. It has long been recognized by the United States Supreme Court that a state legislature may make classifications among its citizens based on the district or county in which these citizens live. In reference to the equal protection clause of the Fourteenth Amendment, the United States Supreme Court has held:
 It contemplates persons and classes of persons. It has not respect to local or municipal regulations that do not injuriously affect or discriminate between persons or classes of persons within the places or municipalities for which such regulations are made.
. . . . .
 . . . [T]here is nothing in the Constitution to prevent any state from adopting any system of laws or judicature it sees fit for all or any part of its territory. If the state of New York, for example, should see fit to adopt the civil law and its method of procedure for New York City and the surrounding counties and the common law method of procedure for the rest of the state, there is nothing in the Constitution of the United States to prevent its doing so. This would not, of itself, within the meaning of the Fourteenth Amendment, be a denial to any person of the equal protection of the laws. If every person residing or being in either portion of the state should be accorded the equal protection of the laws prevailing there, he could not justly complain of a violation of the clause referred to. For as before said, it has respect to persons and classes of persons. IT MEANS THAT NO PERSON OR CLASS OF PERSONS SHALL BE DENIED THE SAME PROTECTION OF THE LAWS WHICH IS ENJOYED BY OTHER PERSONS OR CLASSES IN THE SAME PLACE AND UNDER LIKE CIRCUMSTANCES. . . . Where part of a state is thickly settled and another part has but few inhabitants it may be desirable to have different systems of judicature for the two portions — trial by jury in one, for example, and not in the other. Large cities may require a multiplication of courts and a peculiar arrangement of jurisdictions. It would be an unfortunate restriction of the powers of state government, if it could not, in its discretion, provide for these various exigencies. Missouri v. Lewis, 101 U.S. 22, 31, 25 L.Ed. 989, 992 (1879). (Emphasis supplied.)
The proposition of law that the equal protection clause applies to persons similarly situated rather than all persons within a state was reiterated by the Supreme Court of the United States in Salsburg v. State of Maryland:
 We find little substance to appellant's claim that distinctions based on county areas are necessarily so unreasonable as to deprive him of equal protection of the laws guaranteed by the Federal Constitution. The Equal Protection Clause relates to equality between person as such rather than between areas. Salsburg v. State of Maryland, 346 U.S. 545, 74 S.Ct. 280, 283, 98 L.Ed. 281, 288 (1954).
The contention of the appellants that the difference in the ad valorem tax rate between Jefferson County and other counties under Code 1975, § 40-8-1 (e), renders that section violative of the Equal Protection Clause on its face is erroneous as a matter of law.
 The Fourteenth Amendment to the Constitution of the United States does not prohibit legislation which is limited either in the objects to which it is directed, or by the territory within which it is to operate. It merely requires that all persons subjected to such legislation shall be treated alike, under like circumstances and conditions. Hayes v. Missouri, 120 U.S. 68, 71, 7 S.Ct. 350, 352, 30 L.Ed. 578 (1887). *Page 790 
Similarly the United States Supreme Court held in NorthwesternLaundry v. Des Moines:
 As to the attack upon the ordinance because of arbitrary classification, this question has been so often discussed that nothing further need be said. The ordinance applies equally to all coming within its terms, and the fact that other businesses might have been included does not make such arbitrary classification as annuls the legislation. Nor does it make the classification illegal because certain cities are included and others omitted in the statute. Northwestern Laundry v. Des Moines, 239 U.S. 486, 495, 36 S.Ct. 206, 210, 60 L.Ed. 396 (1915). (Emphasis supplied.)
In cases such as this one where there is no suspect class involved nor any fundamental right the rules of law which govern the constitutionality of a statute assailed on equal protection grounds are inveterate. The equal protection clause does not take from the state the power to classify, but allows the state a wide scope of discretion in this regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. When the classification in such a law is called into question, IF ANY STATE OF FACTS REASONABLY CAN BE CONCEIVED THAT WOULD SUSTAIN IT, THE EXISTENCE OF THAT STATE OF FACTS AT THE TIME THE LAW WAS ENACTED MUST BE ASSUMED, and the burden is on the assailant to prove that there is no conceivable rational basis for the statute. Lindsley v. NaturalCarbonic Gas Co., 220 U.S. 61, 78, 31 S.Ct. 337, 55 L.Ed. 369
(1911); Quong Wing v. Kirkendall, 223 U.S. 59, 32 S.Ct. 192,56 L.Ed. 350 (1912); McGowan v. State of Maryland, 366 U.S. 420,81 S.Ct. 110, 6 L.Ed.2d 393 (1961).
In Allied Stores of Ohio v. Bowers, 358 U.S. 522,79 S.Ct. 437, 3 L.Ed.2d 480 (1959), the U.S. Supreme Court upheld against an equal protection challenge a state statute which exempted from taxation all property of nonresidents held for storage but taxed all such property of residents, reasoning:
 [I]t has long been settled that a classification, though discriminatory, is not arbitrary nor violative of the Equal Protection Clause of the Fourteenth Amendment if any state of facts reasonably can be conceived that would sustain it. 358 U.S. at 528, 79 S.Ct. at 441.
The strength of the presumptions in favor of rationality of any legislative classification and the burden on the assailant of that statute are increased if the statute challenged is a tax statute.
 The broad discretion as to classification possessed by a legislature in the field of taxation has long been recognized. This Court fifty years ago concluded that "the Fourteenth Amendment was not intended to compel the States to adopt an iron rule of equal taxation," and the passage of time has only served to underscore the wisdom of that recognition of the large area of discretion which is needed by a legislature in formulating sound tax policies. Traditionally classification has been a device for fitting tax programs to local needs and usages in order to achieve an equitable distribution of the tax burden. It has, because of this, been pointed out that in taxation, even more than in other fields, legislatures possess the greatest freedom in classification. Since the members of a legislature necessarily enjoy a familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes. The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it. Madden v. Kentucky, 309 U.S. 83, 87, 60 S.Ct. 406, 408, 84 L.Ed. 590, 125 A.L.R. 1383 (1939). (Emphasis supplied.)
On every occasion that the constitutionality of a state taxation statute has been challenged on equal protection grounds, the U.S. Supreme Court has uniformly held that the discretion accorded to the legislature is extremely broad and the challenger *Page 791 
must negative every conceivable rational basis for the statute because the power to tax is essential to the very existence of the state.[1]
In the majority opinion this court states "There may be a rational reason why the legislature selected Jefferson and Morgan Counties for special classification." If the remotest possibility exists that the legislature had a rational basis for its statute then the constitutionality of the statute must be sustained particularly where as here the challenge is to the face of the statute. The majority urges the legislature to specify reasons why citizens of Morgan and Jefferson Counties should be taxed at a higher rate. The U.S. Supreme Court has held that it is not the province of the judiciary to request the legislature to specify the purpose of a statute and the means by which the legislature intends to achieve that end, and then substitute its own judgment for that of the legislature.
 We cannot assume that state legislative enactments were adopted arbitrarily or without good reason to further some legitimate policy of the State. WHAT WERE THE SPECIAL REASONS, MOTIVES OR POLICIES OF THE OHIO LEGISLATURE FOR ADOPTING THE QUESTIONED PROVISO WE DO NOT KNOW WITH CERTAINTY, NOR IS IT IMPORTANT THAT WE SHOULD. FOR A STATE LEGISLATURE NEED NOT EXPLICITLY DECLARE ITS PURPOSE. Allied Stores of Ohio v. Bowers, 358 U.S. 522, 528, 79 S.Ct. 437, 442, 3 L.Ed.2d 480 (1959). SEE ALSO: Southwestern Oil Company v. State of Texas, 217 U.S. 114 at 126, 30 S.Ct. 496, 54 L.Ed. 688 (1910). (Emphasis supplied.)
The purpose of the legislature in enacting a tax statute and the means chosen to achieve that purpose are not matters for judicial scrutiny but rather matters of legislative discretion and no tax statute should be declared unconstitutional unless the challenger has negatived every conceivable rational basis for the statute.
 The State may impose taxes upon the corporation as an entity existing under its laws, as well as upon the capital stock of the corporation or its separate corporate property. And the manner in which its value shall be assessed and the rate of taxation, however arbitrary or capricious, are mere matters of legislative discretion. It is not for us to suggest in any case that a more equitable mode of assessment or rate of taxation might be adopted than the one prescribed by the legislature of the State; our only concern is with the validity of the tax; all else lies beyond the domain of our jurisdiction. Delaware Railroad Tax, 85 U.S. 206, 231, 21 L.Ed. 888 (1873).
The taxpayers in the instant case have not even alleged in their complaint that they can negative every conceivable rational basis for the statute. Originally, on their motion for partial summary judgment, the taxpayers insisted that the difference in treatment of Jefferson County taxpayers and taxpayers of other counties in itself demonstrated that the legislative purpose behind § 40-8-1 (e), and the means chosen to reach that purpose were arbitrary and capricious, and thus the statute as a matter of law is unconstitutional on its face. Clearly this is not the law. In briefs the taxpayers changed their theory arguing that because they had successfully demonstrated that taxpayers in Jefferson and Morgan Counties are treated differently from taxpayers in the other sixty-five *Page 792 
counties in Alabama, the burden shifted to the defendants to demonstrate that the state had a rational basis for the statute. Just as clearly, this is not the law. The burden rests on the taxpayers to prove every element of their prima facie case including in an equal protection challenge to a tax statute that there is no conceivable rational basis for the statute. Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356,364, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973); Salsburg v.Maryland, 346 U.S. 545, 553, 74 S.Ct. 280, 98 L.Ed. 281 (1954).
In the recent case of Fox v. Rosewell, 55 Ill. App.3d 860, 13 Ill.Dec. 570, 371 N.E.2d 287 (1977), the Illinois Appellate Court was faced with a case on all fours with the instant case. In that case a real estate taxpayer challenged on equal protection grounds the constitutionality of an Illinois tax statute which imposed a higher tax rate on those taxpayers living in the more populous areas of the state. The trial court took judicial notice of facts which differentiated populous Cook County from other Illinois counties which conceivably could support a rational basis for the legislature's classification.
 In rejecting plaintiff's constitutional attack and dismissing his complaint, the trial court took judicial notice of the following facts: that the population of Cook County is approximately one-half of the population of the entire State; that the City of Chicago within the county is by far the largest city in population of any other city in the entire State of Illinois; that the assessed value of property in Cook County is greater than the assessed value of any other county in the State of Illinois; that the cost of education, police and fire protection, sanitation, and other services provided to the people of Cook County is at variance with that of any other county in the State of Illinois; and that the financial needs of providing these services are not only greater, but more urgent, more complicated, and more costly.
. . . . .
 It is entirely possible that the legislature in adopting section 224 of the Revenue Act concluded that more densely populated counties have a heavier burden of extending real estate tax revenues to meet their increasing expenses. Plaintiff presents no evidence to the contrary and, in the case before us, we will not substitute our judgment for that of the legislature. At the very least, on the basis of the record before us, we cannot say that the classification is clearly unreasonable or palpably erroneous. Fox v. Rosewell, 55 Ill.App.3d at 290, 291, 13 Ill.Dec. at 573, 574, 371 N.E.2d 287 at 290, 291 (1977). (Emphasis supplied.)
The Illinois Appellate Court affirmed the trial court's decision dismissing the complaint for failure to specifically set forth the facts relied on to rebut the presumption of constitutionality, i.e., to set forth facts which negative every conceivable rational basis for the statute.
 A statute is presumed valid and a party challenging it has the burden of proving it violates one's right to equal protection of the laws or one's right to due process, and the facts relied upon to rebut the presumption of constitutionality must be specifically set forth in the complaint. Legislation is not violative of the equal protection clause even though such legislation differentiates between similarly situated persons if it bears a rational relationship to a legitimate legislative purpose. Fox, 55 Ill.App.3d at 292, 13 Ill.Dec. at 575, 371 N.E.2d at 292 (1977). (Emphasis added.)
The Court of Appeal of Louisiana stated the rule governing the sufficiency of complaints which challenge the constitutionality of a statute in the following manner:
 The general rule is that a litigant cannot raise the question of the unconstitutionality of a statute or ordinance unless such unconstitutionality has been specially pleaded and the grounds particularized. Whitfield v. Jones, La.App., 270 So.2d 153 (1972). (Emphasis added.)
In order to survive a motion to dismiss in a case where the constitutionality of a tax *Page 793 
statute is at issue the complaint must not only allege that similarly situated taxpayers have been treated differently but also that there is no rational basis for the difference in treatment and set forth specifically in the complaint those facts relied upon in making the allegations. In the instant case appellants not only failed to set forth in the complaint the specific facts relied upon to rebut the presumption of constitutionality but also admitted "there is no material issue of fact" and relied solely on a challenge to the face of the statute. In basing their challenge to the constitutionality of Code 1975, § 40-8-1 (e), solely on a demonstration that Jefferson County taxpayers are treated differently from taxpayers of other counties, coupled with an unsupported allegation that the legislature had no rational basis upon which to make this classification, plaintiffs have failed to state a claim entitling them to relief. Borrowing once again from the language of the Illinois Appellate Court:
 Motions to dismiss or strike a pleading admit facts well pleaded, but not conclusions of law or conclusions of facts unsupported by allegations of specific facts upon which such conclusions rest and when constitutional issues are involved, facts relied upon to rebut the presumption of constitutionality must be specifically set forth. Pierce v. Carpentier, 20 Ill.2d 526, 169 N.E.2d 747 (1960); Heyman v. Mahin, 49 Ill.2d 284, 275 N.E.2d 421 (1971). Illinois Pure Water Committee, Inc. v. Yoder, 6 Ill. App.3d 659, 286 N.E.2d 155, 156 (1972). (Emphasis added.)
I would affirm the trial court's decision which granted defendants' motion to dismiss.
[1] Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 359,93 S.Ct. 1001, 35 L.Ed.2d 351 (1973); Carmichael v. SouthernCoal Coke Co., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245, 109 A.L.R. 1327 (1937); Tax Commissioners v. Jackson, 283 U.S. 527,537, 51 S.Ct. 540, 75 L.Ed. 1248, 73 A.L.R. 1464, 75 A.L.R. 1536 (1931); Ohio Oil Co. v. Conway, 281 U.S. 146,50 S.Ct. 310, 74 L.Ed. 775 (1930); Citizens Telephone v. Fuller,229 U.S. 322, 329, 33 S.Ct. 833, 57 L.Ed. 1206 (1913); Bell's GapRailroad Co. v. Pennsylvania, 134 U.S. 232, 237, 10 S.Ct. 533,33 L.Ed. 892 (1890); Michigan Central Railroad Company v.Powers, 201 U.S. 245, 293, 26 S.Ct. 459, 50 L.Ed. 744 (1906);Home Ins. Co. v. New York, 134 U.S. 594, 606, 10 S.Ct. 593,33 L.Ed. 1025 (1890); King v. Mullins, 171 U.S. 404, 435,18 S.Ct. 925, 43 L.Ed. 214 (1898).